**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WASHINGTON D.C.**

| | |
|---|---|
| Hon. **ILYA LIVIZ D.L.D.**, Chief *Jurist for Justice* of National Academy for Jurists, of United States of America himself, and on behalf of all others similarly situated<br>            *Plaintiff,*<br><br>v.<br><br>**FINANCIAL INDUSTRY REGULATORY AUTHORITY**<br>          Defendants, | ) ) ) ) ) ) ) ) ) ) ) | CASE NO. _____<br><br>**FOR THE PEOPLE**<br>by<br>*JURIST FOR JUSTICE*<br>of<br>**U. S. A** |

---

**VERIFIED UNFAIR TRADE & PRACTICE COMPLAINT**



Case: 1:20–cv–01771  Jury Demand
Assigned To : Unassigned
Assign. Date : 6/22/2020
Description: TRO/PI  (D Deck)

**WE THE PEOPLE  -  FOR LIBERTY!**

לעולם לא עוד

"For Life, Liberty, and Pursuit of Happiness!"

Chief Jurist Ilya Liviz D.L.D.
**NATIONAL ACADEMY FOR JURISTS**
*Jurists for Justice* within the Judiciary
Civil Rights & Civil Liberties Advocacy
12 Hemenway St., Rm. 415, Boston, MA 02115
www.NAFJ.US - www.Liviz.com - ilya.liviz@gmail.com - (978) 606-3632

**ACKNOWLEDGEMENT**

*"U.S. Congress is the peoples' voice; please continue to help Americans - God Bless You!"* [1]

         /s/ ilya liviz D.L.D.
         Chief *Jurist for Justice*

---

[1] *See e.g.*; Civil Rights Act, Rehabilitation Act, Americans with Disabilities Act, Family First Prevention Services Act, VA Mission Act, Government in the Sunshine Act, *etcetera.* People are very lucky to have individuals like yourself advocating for them; don't be afraid try new things or give "different" a chance.)

**RECEIVED**

JUN 22 2020

Clerk, U.S. District and
Bankruptcy Courts

1

from creators of
**NATIONAL ACADEMY FOR JURISTS**
*Jurists for Justice* specializing in preservation of
Civil Rights & Civil Liberties within the U.S. judiciary
and
**332 production**
with
***JURISTS FOR JUSTICE* PLEDGE**
"I pledge allegiance to the Flag of the United States of America, and to the Republic for which it
stands, one Nation under God, indivisible, with liberty and justice for all."[2]

**FOR THE PEOPLE SUBMISSION**
for **Justice & Liberty** that is **Equal** for all
**Civil Rights** in association with **Civil Liberties**
non-profit **National Academy For Jurists** production
written by Hon. **Ilya Liviz D.L.D.** inspired by **True Events**
presented in **U.S. District Court** for the **District of Washington D.C.**
pursuant to law of **United States Congress** enforced by **42 U.S.C. § 1983**
in accordance with **Fed. R. Civ. Pro.** and *Jurist's* **Core Values**
amended **June 15**[th] in the year **2020** of our Lord.
**www.NAFJ.US**

| | |
|---|---|
| **USA** | **The Content of This Complaint Has Not Been Evaluated Pursuant to Fed. R. Civ. Pro. Rule 12(b)(6); Viewer Discretion Is Advised – For Reading Understanding and Comprehension, It Is Recommended The Audience Attain Graduate Level Education or Street Equivalent!** |

| | |
|---|---|
| Identification of minors/juveniles and other information warranting redacted as necessary pursuant to Local CM/ECF Adm. Pro. R. N. (1-5), & S., and Fed. R. Civ. P. 5.2, Fed. R. Crim. P. 49.1, and the E-Government Act of 2002, personal identifiers (PID) will be either fully or partially redacted unless they are already known to the public.  Approved for public reproduction by www.NAFJ.US |  |

---

[2] *See* 4 U.S.C., § 4.

ii

**Table of Contents**

PART A: FEDERAL DISTRICT COURT JURISDICTION.....................................1
    I. SYNOPSIS ...............................................................................................1
    II. PROPER PARTY NAMED ....................................................................1
    III. JURISDICTION AND VENUE..............................................................1
    IV. STANDING ...........................................................................................1
    V. DECLARATORY & INJUNCTIVE RELIEF .........................................2
PART B: FINRA LANDSCAPE .........................................................................2
    I. DEFINITIONS ........................................................................................2
    II. REGULATION.......................................................................................2
PART C: CIVIL ACTION GENERAL ALLEGATIONS.....................................3
    I. INJURY TO LIVIZ..................................................................................3
PART D: CLASS-WIDE INJURY .......................................................................4
PART E: CONSTITUTIONAL BASIS .................................................................4
    I. PROPERTY & CONTRACT RIGHTS ....................................................4
PART F: CONGRESSIONAL SUPPORT ............................................................4
    I. REGULATION PURSUANT TO COMMERCE POWER .........................4
    II. NATIONAL LABOR RELATIONS ACT................................................5
    II. FAIR LABOR STANDARDS AMENDMENT ACT ...............................9
        A. Definitions .....................................................................................9
        B. Prima Facie Evidence ..................................................................10
        C. Protections ...................................................................................10
    III. FAAAA ...............................................................................................11
        A. Transportation Policy - 49 U.S.C. § 13101 .................................11
        B. Definitions ...................................................................................11
    IV. FEDERAL TRADE COMMISION ACT ..............................................13
    V. SHERMAN ACT....................................................................................13
    VI. CLAYTON ACT....................................................................................13

A. Definitions ........................................................................... 14

B. Law ...................................................................................... 14

PART G: INJUNCTIVE RELIEF CLASS ............................................ 15

  I. INJUNCTIVE RELIEF UNDER CLAYTON ACT ........................... 15

  II. DAMAGES UNDER CLAYTON ACT ........................................ 15

PART H: ANTITRUST INJURY TO CONSUMERS ............................ 16

  I. INJUNCTIVE RELIEF UNDER CLAYTON ACT ........................... 16

PART I: RELIEF SOUGHT .............................................................. 17

  I. CLAIMS OF ACTION FOR LIVIZ ........................................... 17

  A. CONSTITUTIONAL ............................................................. 17

    Claim 1: Deprivation of Interstate Travel .............................. 17

    Claim 2: Deprivation of Property ........................................... 18

    Claim 3: Deprivation of Right to Contract .............................. 18

    Claim 4: Deprivation of Equal Protection of The Laws .............. 18

    Claim 4: Interference With Liberty To Choose Occupation ......... 19

    Claim 5: Interference With Liberty and Protection of Franchise ... 19

  B. COMMON LAW ................................................................... 19

    Claim 6: Violation of Monopolization/Unlawful Business Practices ... 19

    Claim 7: Violation of State Anti-Discrimination Act ................. 20

  C. CONGRESSIONAL ............................................................... 20

    Claim 8: Violation of 15 U.S.C., § 1 of the Sherman Antitrust Act ... 20

    Claim 9: Violation of 15 U.S.C., § 2 of the Sherman Antitrust Act ... 20

    Claim 10: Violation of the National Labor Relations Act ........... 21

    Claim 11: Violation of Fair Labor Standards and Fair Labor Standards Amendment Act ... 22

    Claim 12: Violation of the FAAAA ........................................ 22

    Claim 13: Violation of the Federal Trade Commission Act ......... 23

    Claim 14: Violation of the Federal Trade Commission Act ......... 23

    Claim 15: Violation of The Clayton Act by Restraint to trade ..... 23

    Claim 16: Violation of Fair Debt Collection Practices Act ......... 23

    Claim 17: Violation of  29  U.S.C., § 187(a) ........................... 23

Claim 18: Violation of The Clayton Act by Restraint to trade ........................ 23

Claim 19: Violation of Fair Debt Collection Practices Act ............................. 23

Claim 20: Violation of  29  U.S.C., § 187(a) .................................................. 23

Claim 21: Violation of Labor Management ..................................................... 23

D. STATUTORY CIVIL RIGHTS ........................................................................ 23

Claim 22: Violation of 42 U.S.C, § 1981 ....................................................... 24

Claim 23: Violation of 42 U.S.C, § 1981(a)(1)............................................... 24

Claim 24: Violation of 42 U.S.C, § 1982....................................................... 24

Claim 25: Violation of 42 U.S.C, § 1983 Freedom of Speech ....................... 24

Claim 26: Violation of 42 U.S.C, § 1983 Equal Protection............................ 24

Claim 27: Violation of 42 U.S.C, § 1983 Deprivation of Property Right ...... 24

Claim 28: Violation of 42 U.S.C, § 1985....................................................... 24

Claim 29: Violation of 42 U.S.C. § 1985(3) .................................................. 24

Claim 30: Violation of 42 U.S.C, § 1986....................................................... 25

II. CLASS ACTION CLAIMS OF ACTION ......................................................... 25

A. CONSTITUTIONAL ....................................................................................... 25

Claim 1: Deprivation of Interstate Travel ...................................................... 25

Claim 2: Deprivation of Property.................................................................... 25

Claim 3: Deprivation of Right to Contract...................................................... 25

Claim 4: Deprivation of Equal Protection of The Laws ................................. 25

Claim 5: Interference With Liberty To Choose Occupation............................ 25

Claim 6: Interference With Liberty and Protection of Franchise.................... 25

Claim 7: Deprivation of Right to Privacy ....................................................... 25

B. COMMON LAW............................................................................................... 26

Claim 8: Violation of Monopolization/Unlawful Business Practices............. 26

Claim 9: Violation of State Anti-Discrimination Act ...................................... 26

C. CONGRESSIONAL .......................................................................................... 26

Claim 10: Violation of 15 U.S.C., § 1 of the Sherman Antitrust Act ............. 26

Claim 11: Violation of 15 U.S.C., § 2 of the Sherman Antitrust Act ............. 26

Claim 12: Violation of the National Labor Relations Act ............................... 26

Claim 13: ATTEMPTED MONOPOLIZATION - Violation of 15 U.S.C., § 2 .................................................................................................................. 26

Claim 14: Violation of Fair Labor Standards and Fair Labor Standards Amendment Act........................................................................................ 26

Claim 15: Violation of the FAAAA ................................................................. 27

Claim 16: Violation of the Federal Trade Commission Act ........................... 27

Claim 17: Violation of the Federal Trade Commission Act ........................... 27

Claim 18: Violation of The Clayton Act by Restraint to trade ...................... 27

Claim 19: Violation of Fair Debt Collection Practices Act ............................ 27

Claim 20: Violation of  29  U.S.C., § 187(a) .................................................. 27

Claim 21: Violation of Labor Management .................................................... 27

D. STATUTORY CIVIL RIGHTS ........................................................................ 27

Claim 22: Violation of 42 U.S.C, § 1981 ....................................................... 27

Claim 23: Violation of 42 U.S.C, § 1981(a)(1)............................................... 27

Claim 24: Violation of 42 U.S.C, § 1982........................................................ 27

Claim 25: Violation of 42 U.S.C, § 1983 Freedom of Speech ....................... 28

Claim 26: Violation of 42 U.S.C, § 1983 Equal Protection............................ 28

Claim 27: Violation of 42 U.S.C, § 1983 Deprivation of Property Right ...... 28

Claim 28: Violation of 42 U.S.C, § 1985........................................................ 28

Claim 29: Violation of 42 U.S.C. § 1985(3) ................................................... 28

Claim 30: Violation of 42 U.S.C, § 1986........................................................ 28

III. JURY DEMAND .......................................................................................... 30

vi

## PART A: FEDERAL DISTRICT COURT JURISDICTION

### I. SYNOPSIS

1.      America is built on capitalistic roots; American economy can't grow, when there are
        oppressive restrictions in-place, *inter alia*, FINRA has promulgated unfair and
        monopolistic restrictions against Americans.

### II. PROPER PARTY NAMED

2.      The Plaintiff, Hon. Ilya Liviz D.L.D.  ("Liviz", or "Chief"), is the Chief *Jurist for Justice* of
        National Academy For Jurists , who advocates for civil rights & civil liberties; is as an
        adult citizen of the United States of America residing within the Suffolk County in Boston,
        Massachusetts.

3.      The Defendant, Financial Industry Regulatory Authority, Inc. ("FINRA"), is a private
        corporation formed on July 30, 2007,[3] with its Headquarters located at 1735 K Street, NW
        Washington, DC 20006.

### III. JURISDICTION AND VENUE

4.      "The district courts  shall have original jurisdiction of any civil action or proceeding arising
        under any Act of Congress regulating commerce or protecting trade and commerce against
        restraints and monopolies..." *See* 28 U.S.C. § 1337(a)

5.      Venue is proper in this district because defendant's primary place of business is in this
        district and because a substantial part of the events or omissions giving rise to the claims
        alleged herein occurred in this district.  *See* 28 U.S.C. § 1391(b)(l), (2).

6.      This court has authority to issue a writ if necessary to enforce jurisdiction; "... all courts
        established by Act of Congress may issue all writs necessary or appropriate in aid of their
        respective jurisdictions and agreeable to the usages and principles of law. *See* 28 U.S.C. §
        1651.

### IV. STANDING

7.      "... antitrust violations and that it will likely be "squeezed" out of the market in the
        foreseeable future because of defendants' actions are sufficient." *See Cia. Petrolera
        Caribe, Inc. v. Arco Caribbean, Inc*. 754 F.2d 404 (1st. Cir. 1985).

8.      "Congress has given private citizens rights of action for injunctive relief and damages for
        antitrust violations without regard to the amount in controversy. 28 U. S. C. § 1337; 15 U.
        S. C. § 15. Rule 23 of the Federal Rules of Civil Procedure provides for class actions that

---

[3] *See* https://www.finra.org/rules-guidance/rulebooks/corporate-organization/restated-certificate-incorporation-financial

1

may enhance the efficacy of private actions by permitting citizens to combine their limited resources to achieve a more powerful litigation posture." *See Hawaii v. Standard Oil Co.*, 405 U.S. 251, at [*266] (1972) (Reversing district court's Summary Judgment because foresee ability of traceable injury is sufficient to show actual or threatened injury to a person.)

## V. DECLARATORY & INJUNCTIVE RELIEF

9.  This Court may issue a Declaratory Judgment pursuant to 28 U.S.C., §§ 2201-02. "The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." *See* Fed. R. Civ. Pro. Rule 57. "The court may order a speedy hearing of a declaratory judgment action." *See ibid.*

10. Pursuant to Unfair Labor Practice Act the court; "shall have power to grant such temporary relief or restraining order as it deems just and proper, and to make and enter a decree enforcing, modifying and enforcing as so modified " *See* 29 U.S.C. § 160(e).

11. If the court asserts jurisdiction over Defendants, Clayton Act provides for injunctive relief. *See* 15 U.S.C., § 26.

12. This, court may issue the preliminary and permanent injunctive relief with notice, or temporary restraining order without notice pursuant to Fed. R. Civ. Pro. R. 65 at its earliest convenience.

## PART B: FINRA LANDSCAPE

## I. DEFINITIONS

13. The term "customer" means any person for whom securities are purchased or sold or to whom securities are purchased or sold whether on a regular way, when issued, delayed or future delivery basis. It will also include any person for whom securities are held or carried and to or for whom a member extends, arranges or maintains any credit. *See* 4210(a)(3).[4]

14. "The term 'pattern day trader' means any customer who executes four or more day trades within five business days." *See* 4210(f)(8)(B)(ii).[5]

## II. REGULATION

15. FINRA plays a critical role in ensuring the integrity of America's financial system.[6]

---

[4] *See* https://www.finra.org/rules-guidance/rulebooks/finra-rules/4210
[5] *See id.*
[6] *See* finra.org/about/what-we-do

16.  Every investor in America relies on one thing: fair financial markets. To protect investors and ensure the market's integrity, FINRA is a government-authorized not-for-profit organization that oversees U.S. broker-dealers.[7]

17.  FINRA promulgated special requirements for pattern day traders; "[t]he minimum equity required for the accounts of customers deemed to be pattern day traders shall be $25,000. This minimum equity must be deposited into he account before such customer may continue day trading and must be maintained in the customer's account at all times." *See* 4210(f)(8)(iv)(a).[8]

18.  "In the event that the member at which a customer seeks to open an account or resume day trading in an existing account, knows or has a reasonable basis to believe that the customer will engage in pattern day trading, then the minimum equity required under subparagraph (iv)a. above ($25,000) must be deposited in the account prior to commencement of day trading." *See ibid.*

## PART C: CIVIL ACTION GENERAL ALLEGATIONS

## I. INJURY TO LIVIZ

19.  On 06/03/2020, Liviz opened an account with E*Trade; and transferred of $1,000 from his personal account into the E*Trade account with a goal of earning an income by taking part in online stock trading.

20.  On 06/10/2020, E*Trade notified Liviz he could begin earning money through online stock trading.

21.  On 06/10/2020, Liviz spoke to Rob, a representative of E*Trade, to discuss a strategy of earning an income through high volume trading.  Rob, stated that E*Trade can't allow Liviz to do so based on his financial status; Liviz was required to deposit an additional $24,000 based on regulations promulgated by FINRA.

22.  Liviz was told if he made more than three trades within five days, his account would be seized and he would be required to transfer additional money until the account minimum of $25,000 is reached.

23.  Online trading is an automated process that has built-in ability to service high volumes of trades; at present the system is limited by the FINRA regulation.

24.  FINRA, through its regulations, limits Liviz's ability to earn an income because he has less than $25,000 in available assets.

---

[7] *See* https://www.finra.org/about

[8] *See* https://www.finra.org/rules-guidance/rulebooks/finra-rules/4210

3

25. FINRA, through its regulations, has indefinitely deprived Liviz from partaking in the trade.

26. FINRA, through its regulations, has diminished Liviz's property value.

## PART D: CLASS-WIDE INJURY

27. America is built on credit; FINRA, through its unfair and deceptive regulations, has prevented companies like E*Trade and TD Ameritrade, to market themselves to millions of Americans.

28. Many Americans, don't have equal access to enjoy the same benefits in this trade, based on unfair and deceptive trade practice targeted against them by FINRA.

## PART E: CONSTITUTIONAL BASIS

### I. PROPERTY & CONTRACT RIGHTS

29. Life, liberty, and property are forbidden to be taken "without due process of law," and "equal protection of the laws" is guaranteed to all. Life is the gift of God, and the right to preserve it is the most sacred of the rights of man. Liberty is freedom from all restraints but such as are justly imposed by law. Beyond that line lies the domain of usurpation and tyranny. *See Slaugther-House Cases*, 83 U.S. 36 (1872).

30. Property is everything which has an exchangeable value, and the right of property includes the power to dispose of it according to the will of the owner. Labor is property, and as such merits protection. The right to make it available is next in importance to the rights of life and liberty. It lies to a large extent at the foundation of most other forms of property, and of all solid individual and national prosperity." *See id*, at [***166]  (1872).

31. "Due protection of the rights of property has been regarded as a vital principle of republican institutions. 'Next in degree to the right of personal liberty,' Mr. Broom in his work on Constitutional Law says, 'is that of enjoying private property without undue interference or molestation.'" *See Chicago, B. & Q. R. Co. v. Chicago*, 166 U.S. 226, at [*236] (1897).

32. "Included in the right of personal liberty and the right of private property— partaking of the nature of each—is the right to make contracts for the acquisition of property. Chief among such contracts is that of personal employment, by which labor and other services are exchanged for money or other forms of property. If this right be struck down or arbitrarily interfered with, there is a substantial impairment of liberty in the long-established constitutional sense." *See Coppage v. Kansas*, 236 U.S. 1, 14 (1915).

## PART F: CONGRESSIONAL SUPPORT

### I. REGULATION PURSUANT TO COMMERCE POWER

33. "The power of Congress over interstate commerce is not confined to the regulation of commerce among the states. It extends to those activities intrastate which so affect interstate commerce or the exercise of the power of Congress over it as to make regulation of them appropriate means to the attainment of a legitimate end, the exercise of the granted power of Congress to regulate interstate commerce ." *See United States v. Darby*, 312 U.S. 100, at 118 (1941).

34. The Commerce Clause, pursuant to U.S. Const., art. I, § 8, cl. 3 empowers Congress to regulate commerce among several states; regulation of commodity and persons engaged in a trade without infringement of the states' U.S. Cons. amend X rights by abstaining from regulating the state itself. *See Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264 (1981) (Court upheld Act regulating minors.)

35. There are; "... three broad categories of activity that Congress may regulate under its commerce power. First, Congress may regulate the use of the channels of interstate commerce. Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities. Finally, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, *i. e.*, those activities that substantially affect interstate commerce..." *See United States v. Lopez*, 514 U.S. 549 (1995). (Internal citations omitted.)

36. "The 'enterprise concept' of coverage is clearly within the power of Congress under the Commerce Clause." *See Maryland v. Wirtz*, 392 U.S. 183 (1968). "... an enterprise which has employees engaged in commerce or in the production of goods for commerce, including employees handling, selling, or otherwise working on goods that have been moved in or produced for commerce by any person, and which - [falls in any one of four listed categories] [9] ...". *See id.*

## II. NATIONAL LABOR RELATIONS ACT

37. "A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft, or occupation; or have direct or indirect interests therein; or who are employees of the same employer; or who are members of the same or an affiliated organization of employers or employees; whether such dispute is (1) between one or more employers or associations of employers and one or more employees or associations of employees; (2) between one or more employers or associations of employers and one or more employers or associations of employers; or (3) between one or more employees or associations of employees and one or more employees or associations of employees; or when the case involves any conflicting or competing interests in a "labor dispute" (as defined in this section) of "persons participating or interested" therein (as defined in this section)." *See* 29 U.S.C. § 113(a)

---

[9] State Bar falls under *public agency* activity. *See* 29 U.S.C., § 201(s)(1)(C). *See also* Definition of Public Agency at ¶ 136 *infra*.

38.    "A person or association shall be held to be a person participating or interested in a labor dispute if relief is sought against him or it, and if he or it is engaged in the same industry, trade, craft, or occupation in which such dispute occurs, or has a direct or indirect interest therein, or is a member, officer, or agent of any association composed in whole or in part of employers or employees engaged in such industry, trade, craft, or occupation." *See* 29 U.S.C. § 113(b)

39.    "The term "labor dispute" includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee." *See* 29 U.S.C. § 113(c).

40.    "If any provision of this chapter or the application thereof to any person or circumstance is held unconstitutional or otherwise invalid, the remaining provisions of this chapter and the application of such provisions to other persons or circumstances shall not be affected thereby." *See* 29 U.S.C. § 114.

41.    "Experience has further demonstrated that certain practices by some labor organizations, their officers, and members have the intent or the necessary effect of burdening or obstructing commerce by preventing the free flow of goods in such commerce through strikes and other forms of industrial unrest or through concerted activities which impair the interest of the public in the free flow of such commerce. The elimination of such practices is a necessary condition to the assurance of the rights herein guaranteed." *See* 29 U.S.C., § 151, at ¶ 4.

42.    "The first amendment's protection in the legal aid context extends not only to the organization itself, but also to its staff, members, contributors and others who affiliate with it. Any law that adversely affects the exercise of first amendment freedoms in connection with legal aid activity must be necessary to correct a serious and substantive evil and must be precisely drawn to serve that purpose. Moreover, any law affecting such freedoms must prohibit actual, not potential evils before it may constitutionally be applied." *See International Union, United Auto., etc. v. National Right to Work Legal Defense & Education Foundation, Inc.*, 590 F. 2d 1139 (D.C. Cir. 1978) (Internal citations omitted.)

43.    "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title." *See* 29 U.S.C., § 157.

44.    "The term 'person' includes one or more individuals, labor organizations, partnerships, associations, corporations, legal representatives, trustees, trustees in cases under title 11, or receivers." *See* 29 U.S.C., § 152(1).

6

45.  "The term 'employer' includes any person acting as an agent of an employer, directly or indirectly, but shall not include the United States or any wholly owned Government corporation, or any Federal Reserve Bank, or any State or political subdivision thereof, or any person subject to the Railway Labor Act [45 U.S.C. 151 et seq.], as amended from time to time, or any labor organization (other than when acting as an employer), or anyone acting in the capacity of officer or agent of such labor organization." *See* 29 U.S.C., § 152(2).

46.  "The term 'employee' shall include any employee, and shall not be limited to the employees of a particular employer, unless this subchapter explicitly states otherwise, and shall include any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice, and who has not obtained any other regular and substantially equivalent employment, but shall not include any individual employed as an agricultural laborer, or in the domestic service of any family or person at his home, or any individual employed by his parent or spouse, or any individual having the status of an independent contractor, or any individual employed as a supervisor, or any individual employed by an employer subject to the Railway Labor Act [45 U.S.C. 151 et seq.], as amended from time to time, or by any other person who is not an employer as herein defined." *See* 29 U.S.C., § 152(3).

47.  "The term 'representatives' includes any individual or labor organization." *See* 29 U.S.C., § 152(4).

48.  "The term 'labor organization' means any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work." *See* 29 U.S.C., § 152(5).

49.  "The term 'commerce' means trade, traffic, commerce, transportation, or communication among the several States, or between the District of Columbia or any Territory of the United States and any State or other Territory, or between any foreign country and any State, Territory, or the District of Columbia, or within the District of Columbia or any Territory, or between points in the same State but through any other State or any Territory or the District of Columbia or any foreign country." *See* 29 U.S.C., § 152(6).

50.  "The term "affecting commerce" means in commerce, or burdening or obstructing commerce or the free flow of commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce." *See* 29 U.S.C., § 152(7).

51.  "The term 'labor dispute' includes any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment,

regardless of whether the disputants stand in the proximate relation of employer and employee." *See* 29 U.S.C., § 152(9).

52. "The term "professional employee" means—**(a)**any employee engaged in work (i) predominantly intellectual and varied in character as opposed to routine mental, manual, mechanical, or physical work; (ii) involving the consistent exercise of discretion and judgment in its performance; (iii) of such a character that the output produced or the result accomplished cannot be standardized in relation to a given period of time; (iv) requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study in an institution of higher learning or a hospital, as distinguished from a general academic education or from an apprenticeship or from training in the performance of routine mental, manual, or physical processes; or **(b)** any employee, who (i) has completed the courses of specialized intellectual instruction and study described in clause (iv) of paragraph (a), and (ii) is performing related work under the supervision of a professional person to qualify himself to become a professional employee as defined in paragraph (a)." *See* 29 U.S.C., § 152(12)(a)-(b).

53. "It shall be an unfair labor practice for a labor organization or its agents - **(1)** to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 of this title: *Provided*, That this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein; or (B) an employer in the selection of his representatives for the purposes of collective bargaining or the adjustment of grievances; **(2)** to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3) or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership..." *See* 29 U.S.C., § 158(b)(1)-(3).

54. "It shall be an unfair labor practice for an employer to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is—**(A)** forcing or requiring any employer or self-employed person to join any labor or employer organization or to enter into any agreement which is prohibited by subsection (e) **(B)** forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 159 of this title: ..." *See* 29 U.S.C., § 158(b)(4)(i)(A)-(B)

8

55. It shall be an unfair labor practice for a labor organization or its agents "to require of employees covered by an agreement authorized under subsection (a)(3) the payment, as a condition precedent to becoming a member of such organization, of a fee in an amount which the Board finds excessive or discriminatory under all the circumstances. In making such a finding, the Board shall consider, among other relevant factors, the practices and customs of labor organizations in the particular industry, and the wages currently paid to the employees affected;" *See* 29 U.S.C., § 158(b)(5).

56. This *jurist* is forced to come up with additional funds or face indefinite suspension from day trading. FINRA taking part in unlawful practice that burdens the financial trade. As a result, access to financial resources remain restricted to the average American, *inter alia*, the average citizen is denied access to strategic investment practice, and companies are redistricted from promoting their businesses.

## II. FAIR LABOR STANDARDS AMENDMENT ACT

57. Fair Labor Standards Act ("FLSA") was passed in 1938. Due to wartime, its effects were postponed, with subsequent promulgation of Fair Labor Standards Amendment Act ("FLSAA") of 1949. *See* 29 U.S.C. §§ 201 - 209.[10]

## A. Definitions

58. "'Person' means an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." *See* 29 U.S.C., § 203(a).

59. "'Commerce' means trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." *See* 29 U.S.C., § 203(b).

60. "'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization." *See* 29 U.S.C., § 203(d).

61. "'Employ' includes to suffer or permit to work." *See* 29 U.S.C., § 203(g).

62. "'Industry' means a trade, business, industry, or other activity, or branch or group thereof, in which individuals are gainfully employed. *See* 29 U.S.C., § 203(h).

63. "'Goods' means goods (including ships and marine equipment), wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof." *See* 29 U.S.C., § 203(i).

---

[10] *See* Pub. L. 81-393, 63 Stat. 910 (1949)

9

64. "'Public agency' means the Government of the United States; the government of a State or political subdivision thereof; any agency of the United States (including the United States Postal Service and Postal Regulatory Commission), a State, or a political subdivision of a State; or any interstate governmental agency." *See* 29 U.S.C., § 203(x).

65. "'Enterprise' means the related activities performed (*either through unified operation or common control*) by any person or persons for a common business purpose ... but shall not include the related activities performed for such enterprise by an independent contractor ..." *See Maryland v. Wirtz*, 392 U.S. 183, at note. 27, at ¶ 2. (Boom.) (Clarifying 29 U.S.C., § 203 (r).)

## B. Prima Facie Evidence

66. " ... no provision of this chapter shall excuse any common carrier from its obligation to accept any goods for transportation; and except that any such transportation, offer, shipment, delivery, or sale of such goods by a purchaser who acquired them in good faith in reliance on written assurance from the producer that the goods were produced in compliance with the requirements of this chapter..." *See* 29 U.S.C., § 215(a)(1).

67. "... it shall be unlawful for any person- to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter..." *See* 29 U.S.C., § 215(a)(3).

68. "For the purposes of subsection (a)(1) proof that any employee was employed in any place of employment where goods shipped or sold in commerce were produced, within ninety days prior to the removal of the goods from such place of employment, shall be prima facie evidence that such employee was engaged in the production of such goods." *See* 29 U.S.C., § 215(b).

## C. Protections

69. "No employer shall discharge or in any manner discriminate against any employee with respect to his or her compensation, terms, conditions, or other privileges of employment because the employee (or an individual acting at the request of the employee) has - objected to, or refused to participate in, any activity, policy, practice, or assigned task that the employee (or other such person) reasonably believed to be in violation of any provision of this title (or amendment), or any order, rule, regulation, standard, or ban under this title (or amendment)." *See* 29 U.S.C. § 218c(a)(5)

70. Pursuant to 29 U.S.C. § 218c(b)(1) a Complaint has to be initiated with the Secretary of Labor within 180 days (15 U.S.C. § 2087(b)(1). However, pursuant to 29 U.S.C. § 218c(b)(2), "[n]othing in this section shall be deemed to diminish the rights, privileges, or remedies of any employee under any Federal or State law or under any collective

10

bargaining agreement." Thus, pursuant to due process and interstate commerce clause, a Complaint may be filed directly with the federal court.

## III. FAAAA

### A. Transportation Policy - 49 U.S.C. § 13101

(A)   To ensure the development, coordination, and preservation of a transportation system that meets the transportation needs of the United States, including the United States Postal Service and national defense, it is the policy of the United States Government to oversee the modes of transportation and in overseeing those modes; (A) to recognize and preserve the inherent advantage of each mode of transportation; (B) to promote safe, adequate, economical, and efficient transportation; (C) to encourage sound economic conditions in transportation, including sound economic conditions among carriers; (D) to encourage the establishment and maintenance of reasonable rates for transportation, without unreasonable discrimination or unfair or destructive competitive practices; (E) to cooperate with each State and the officials of each State on transportation matters; (F) and to encourage fair wages and working conditions in the transportation industry.  *See* 49 U.S.C. § 13101(a)(1)(A-F) (emphasis added.)

71.   This part shall be administered and enforced to carry out the policy of this section and to **promote the public interest**.  *See* 49 U.S.C. § 13101(b) (*emphasis added.*)

### B. Definitions

72.   "The term **"control"**, when referring to a relationship between persons, includes actual control, legal control, and the power to exercise control, through or by - (A) common directors, officers, stockholders, a voting trust, or a holding or investment company, or (B) any other means." See 49 U.S.C. § 13102(5)(A & B) (emphasis added.)

73.   "The term **"person"**, in addition to its meaning under [1 U.S.C. § 1][11] includes a trustee, receiver, assignee, or personal representative of a person." *See* 49 U.S.C. § 13102(18) (emphasis added.)

---

[11] In determining the meaning of any Act of Congress, unless the context indicates otherwise - words importing the singular include and apply to several persons, parties, or things; words importing the plural include the singular; words importing the masculine gender include the feminine as well; words used in the present tense include the future as well as the present; the words "insane" and "insane person" shall include every idiot, insane person, and person non compos mentis; the words **"person"** and "whoever" include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals; **"officer"** includes any person authorized by law to perform the duties of the office; "signature" or "subscription" includes a mark when the person making the same intended it as such; "oath" includes affirmation, and "sworn" includes affirmed; "writing" includes printing and typewriting and reproductions of visual symbols by photographing, multigraphing, mimeographing, manifolding, or otherwise. *See* 1 U.S.C. § 1 (emphasis added.)

11

74. "The term "**State**" means the 50 States of the United States and the District of Columbia." *See* 49 U.S.C. § 13102(21) (emphasis added.)

75. "The term "**transportation**" includes - (A) a motor vehicle, vessel, warehouse, wharf, pier, dock, yard, **property**, facility, **instrumentality**, or equipment of any kind related to the movement of passengers or property, or both, regardless of ownership or an agreement concerning use; and (B) services related to that movement, including arranging for, receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, packing, unpacking, and interchange of passengers and property." *See* 49 U.S.C. § 13102(23) (emphasis added.)

76. "Federal law--including 49 U.S.C.S. § 14501(c)(1), which generally prohibited state from enacting any law related to motor carrier's price, route, or service, with respect to transportation of property--held to pre-empt two Maine provisions that purported to regulate delivery of tobacco to customers within state." *See Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364 (2008). (Finding imposition of civil liability laws were pre-empted because they related to carrier service which had a significant and adverse impact on the congressional goal of precluding state regulation in lieu of competitive market forces.)

77. "State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier (other than a carrier affiliated with a direct air carrier covered by section or any motor private carrier, broker, or freight forwarder with respect to the transportation of property." *See* 49 U.S.C. § 14501(c)(1). *See also* 49 U.S.C. § 41713(b)(4)(A).

78. States may not pass laws that force and effect fees to interstate services is pre-empted by FAAAA. *See Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364 (2008). *See* similarly *Morales v. TWA*, 504 U.S. 374 (1992) (Court held state federal law pre-empts the state from preventing out-of-state un-licensed tobacco retailers from shipping and selling within the state.)

79. "Court determined (1) that [s]tate enforcement actions having a connection with, or reference to, carrier rates, routes, or services' are pre-empted; (2) that such pre-emption may occur even if a state law's effect on rates, routes, or services is only indirect; (3) that, in respect to pre-emption, it makes no difference whether a state law is consistent or inconsistent with federal regulation; and (4) that pre-emption occurs at least where state laws have a significant impact related to Congress' deregulatory and pre-emption-related objectives. The Court described Congress' overarching goal as helping ensure transportation rates, routes, and services that reflect maximum reliance on competitive market forces, thereby stimulating efficiency, innovation, and low prices, as well as variety and quality." *See Rowe v. N.H. Motor Transp. Ass'n,* 552 U.S. 364, at [4] (2008) (Internal citations and emphasis omitted.)

## IV. FEDERAL TRADE COMMISION ACT

80. "Congress enacted § 5 of the Federal Trade Commission Act to combat in their incipiency trade practices that exhibit a strong potential for stifling competition. In large measure the task of defining 'unfair methods of competition' was left to the Commission." *See Ftc v. Texaco*, 393 U.S. 223 (1968).

81. "The legislative history shows that Congress concluded that the best check on unfair competition would be "an administrative body of practical men ... who will be able to apply the rule enacted by Congress to particular business situations, so as to eradicate evils with the least risk of interfering with legitimate business operations." *See Ftc v. Texaco*, 393 U.S. 223, at [*226] (1968).

## V. SHERMAN ACT

82. Congress enacted the Sherman Antitrust Act in 1890. *See* 15 U.S.C., § 1 et seq.

83. Section 1 of the Sherman Act, 15 U. S. C. § 1, makes unlawful every contract, combination . . . or conspiracy, in restraint of trade or commerce among the several States. And § 2, 15 U. S. C. § 2, makes it unlawful to monopolize, [****17] or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States... We may assume also, without deciding, that Congress could, in the exercise of its commerce power, prohibit a state from maintaining a stabilization program like the present because of its effect on interstate commerce." Quoted from *Parker v. Brown*, 317 U.S. 341 (1943) (internal quotations omitted).

84. "The fact that the State Bar is a state agency for some limited purposes does not create an antitrust shield that allows it to foster anticompetitive practices for the benefit of its members." *See Goldfarb v. Va. State Bar*, 421 U.S. 773 (1975) (court did not find there was price fixing, but failed to address the gate-keeping rules of the bar which is part of this action and prevents practice of law all together).

85. *Bates v. State Bar of Arizona*, 433 U.S. 350 (1977) relied upon *Parker v. Brown*, 317 U.S. 341 (1943) ; however, the court failed to recognize and differentiate the difference between a state's ability to regulate unlicensed attorneys and licensed attorneys coming into the state to practice their trade - the later has not been presented yet.

86. The individual states' bar require various fees, tests, and/or other methods, that prevent in-state competition from out-of-state licensed attorneys; activities that play an important part on commercial intercourse, and exert a restraint on commerce through their anticompetitive activities.

## VI. CLAYTON ACT

13

## A. Definitions

87. "*Antitrust laws*, as used herein, includes the Act entitled An Act to protect trade and commerce against unlawful restraints and monopolies, approved July second, eighteen hundred and ninety; sections seventy-three to seventy-six, inclusive, of an Act entitled An Act to reduce taxation, to provide revenue for the Government, and for other purposes, of August twenty-seventh, eighteen hundred and ninety-four; an Act entitled An Act to amend sections seventy-three and seventy-six of the Act of August twenty-seventh, eighteen hundred and ninety-four, entitled An Act to reduce taxation, to provide revenue for the Government, and for other purposes, approved February twelfth, nineteen hundred and thirteen; and also this Act. *See* 15 U.S.C., § 12(a), at ¶ 1.

88. "*Commerce*, as used herein, means trade or commerce among the several States and with foreign nations, or between the District of Columbia or any Territory of the United States and any State, Territory, or foreign nation, or between any insular possessions or other places under the jurisdiction of the United States, or between any such possession or place and any State or Territory of the United States or the District of Columbia or any foreign nation, or within the District of Columbia or any Territory or any insular possession or other place under the jurisdiction of the United States: *Provided*, That nothing in this Act contained shall apply to the Philippine Islands." *See* id., at ¶ 2.

89. "The word *person* or *persons* wherever used in this Act shall be deemed to include corporations and associations existing under or authorized by the laws of either the United States, the laws of any of the Territories, the laws of any State, or the laws of any foreign country." *See ibid.*

90. Antitrust laws not applicable to labor organizations; "[t]he labor of a human being is not a commodity or article of commerce." *See* 15 U.S.C., § 17. However attorneys do not rely on their labor to earn their income; knowledge of law has an independent property value that retains its value and can be sold for a price by third parties to others, exampli gratia, attorney can create a memorandum that can be sold to others and re-sold as property by new owners.

## B. Law

91. "Section 4 of the Act, Title 15, Sec. 15, U.S.C.A., provides that any person who shall be injured in his business or property, as a result of violation of the Act, may recover damages. *See Roseland v. Phister Mfg. Co.* 125 F. 2d 417, at [**4] (7th. Cir. 1942).

92. "It signifies ordinarily that which habitually busies, or engages, time, attention or labor, as a principal serious concern or interest. In a somewhat more truly economic, legal and industrial sense, it includes that which occupies the time, attention, and labor of men for the purpose of livelihood or profit, - persistent human efforts which have for their end pecuniary reward. It denotes "the employment or occupation in which a person is engaged to procure a living." *See Roseland v. Phister Mfg. Co.* 125 F. 2d 417, at [**5] (7th. Cir. 1942).

14

93. "Clayton Act authorizes the recovery of treble damages for injuries to a person's "business or property" by reason of violations of the federal antitrust laws. See 15 U.S.C., § 15.

94. "... any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee." See 15 U.S.C., § 17(a).

95. "It is the source of injury, not the character of property or business injured, which constitutes the test of recovery." See Roseland v. Phister Mfg. Co. 125 F. 2d 417, at [**5] (7th. Cir. 1942). "... as a matter of law from the face of the complaint that plaintiff has incurred no damage. What the situation may be after the proof has been submitted cannot be foreseen. See id., at [**9] (Appeals court reversing Judgment of Dismissal.)

96. "Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws, including sections 13, 14, 18, and 19 of this title, when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity, under the rules governing such proceedings, and upon the execution of proper bond against damages for an injunction improvidently granted and a showing that the danger of irreparable loss or damage is immediate, a preliminary injunction may issue". See 15 U.S.C., § 26.

97. Legislative history, pursuant to 15 U.S.C., § 15a, limits recovery to damages to business or property. See Hawaii v. Standard Oil Co., 405 U.S. 251 (1972).

## PART G: INJUNCTIVE RELIEF CLASS

### I. INJUNCTIVE RELIEF UNDER CLAYTON ACT

98. For injunctive relief under the Clayton Act, 15 U.S.C., § 26

99. All persons or entities in the United States (excluding federal, state and local governmental entities, its directors, officers and agents) who: are restricted to take part in trade due to restriction promulgated by defendants.

### II. DAMAGES UNDER CLAYTON ACT

100. For injunctive relief under the Clayton Act, 15 U.S.C., § 15.

101. All persons or entities in the United States (excluding federal, state and local governmental entities, its directors, officers and agents) who: are restricted to take part in trade due to restriction promulgated by defendants.

102. The Classes are so numerous that joinder of all member is impractical.  The classes includes most of the nation's attorneys, off who are geographically dispersed throughout the United States.

103. Plaintiffs' claims are typical of the claims of the members of the classes because plaintiffs and all Class members were damaged by the same wrongful conduct of the defendant alleged herein.

104. There are questions of law and fact common to the Classes which predominate over any questions affecting only individual Class members.  Such common questions include:
a) the definition of the relevant markets;
b) whether Defendants monopolized and continues to monopolize the relevant markets;
c) whether Defendant attempted to monopolize and continues to attempt to monopolize the relevant markets through their restrictions;
d) whether the contractual conditions imposes upon American citizens is unconscionable:
e) whether Defendants imposed limitations upon American citizens and American companies, are unconscionable or in violation of the U.S. Constitution or Congressional anti-monopolization/anti-commerce statutory mandates
f) the appropriateness of injunctive relief to restrain ongoing and future violations of the laws.

105. The claims of the plaintiffs are typical for the claims of the Classes, and plaintiffs have no interest adverse to the interest of other members of the Classes.

106. Plaintiff will fairly and adequately protect the interests of the Classes, is a legal scholar who is competent in the prosecution of complex class actions and antitrust litigation.

107. A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without duplication of efforts and expense that numerous individual actions would engender.  Class treatment will also permit the adjudication of relatively small claims by many Class members who could not afford on their own to individually litigate an antitrust claim against a large state  defendant.  There are no difficulties likely to be encountered in the management for  this class action that would preclude its maintenance as class action, and there alternative options that can be presented to the court to address all issues as they come up, to promote fair and efficient adjudication of the controversy.

## PART H: ANTITRUST INJURY TO CONSUMERS

## I. INJUNCTIVE RELIEF UNDER CLAYTON ACT

108. Through the unlawful acts and practices described above, defendants has harmed competition, consumers and innovation by causing consumers to pay supracompetetitive prices for legal assistance that is limited to intra-state approved only.

16

109. Those practices, described herein, have also allowed Defendants to obtain and maintain illegal monopolies within their respective states.

110. By limiting practice of law to attorneys approved to practice within their respective state, and requiring additional time-consuming and expensive steps for out-of-state attorneys to comply with prior to being able to practice law within the Defendants'' state, it limited attorneys' commercial speech, ability to freely practice their trade, and prevented intra-state consumers from having more affordable and more diverse options for legal representation.

111. Consumers have been further injured as innovative legal practitioners are limited to practice within their respective state, and unable to readily make themselves available to consumers, and innovative attorneys who lack the funds are financially foreclosed from being able to provide their services for consumers.  Nationally, the defendants maintained and supported  anticompetitive conduct by excluding out-of-state practitioners, and limiting access to alternate providers to their intra-state consumers.

112. Defendants anticompetitive conduct has deterred the development of competing offers of legal services, damaging consumers by depriving them of choice of legal counsel with different and possibility superior sets of features.

113. Consumers right to choose legal counsel of their choice, is a constitutionally guaranteed right which has been deprived by Defendants nationally.

114. Plaintiffs and the classes have been injured by this anticompetitive conduct and will continue to suffer injury unless the relief prayed for herein is granted.

## PART I: RELIEF SOUGHT

## I. CLAIMS OF ACTION FOR LIVIZ

## A. CONSTITUTIONAL

Claim 1: Violation of Art. I, § 8(5)

115. All paragraphs supra and hereafter are re-alleged as if stated herein in paragraphs hereafter.

116. Right "[t]o coin Money, **regulate** the Value thereof, " falls on congress.

117. Defendants are maintaining state based monopolistic anticompetitive conduct that discriminates against Americans with limited financial resources, without a good reason to do so.

118. This type of conduct violated Liviz's constitutional rights and violates Congressional Acts designed to Counter such anticompetitive conduct.

17

119. Defendants conduct harms the people of this nation and prevents beneficial to the people competition in the legal trade.

120. Defendants conduct harms the people by limiting accessibility to financial options, and partaking in a financial trade.

121. Defendant's conduct harms America by diminished national economic growth.

122. Defendants discriminate against the common citizen by depriving their right to enter into contracts and dispose of their property as they wish.

123. Defendant's conduct is based on disparate animus toward Americans with diminished financial resources.

124. Defendants engaged in unlawful intentional discrimination which deprived this *jurist* and Class Members their Civil Right/s.

125. Defendants who worked for, under, or with FINRA, knew or should have known, their conduct is unlawful, and having knowledge of the wrongs conspired to discriminate against Americans with limited resources, and/or having power to prevent or aid in preventing the commission of the same, neglected or refused to so.                                           .

126. As result of defendants discriminatory and unlawful conduct in violation of anticompetitive antitrust laws, Americans have diminished access to justice to state's citizens is less readily available and less affordable.

127. The market concerns property right, which immediately loses its value based on restriction of freedom of use. This anticompetitive unlawful restrain upon the transport of good is readily forceable and traceable to anticompetitive contact of the states.

Claim 2: Deprivation of Property

128. All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

129. FINRA diminished Liviz's property by placing restrictions thereon.

Claim 3: Deprivation of Right to Contract

130. All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

131. FINRA, deprived Liviz his right to enter into contracts by placing restrictions thereon.

Claim 4: Deprivation of Equal Protection of The Laws

132. All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

18

133. *See U.S. v. Windsor*, 570 U.S. 744 (2013) ("The liberty protected by the Fifth Amendment's Due Process Clause contains within it the prohibition against denying to any person the equal protection of the laws.")

134. Liviz's rights are not equal to those of his neighbor.

Claim 5: Interference With Liberty To Choose Occupation

135. All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

136. Violation of Property & Contract right interferes with citizens' liberty to choose their occupation.

Claim 6: Interference With Liberty and Protection of Franchise

137. All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

138. Practice of law is commercial speech that one has an a property interest to freely move and establish as franchise within the nation's states.

Claim 7: Deprivation of Right to Privacy

139. All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

140. Defendants and their employees and agents violated Plaintiffs' Fourth Amendment rights to be free from unreasonable seizure of their property through diminution, and other restrictions without a warrant.

141. These unlawful actions were done with the specific intent to deprive Plaintiffs of their constitutional rights to be secure in their privacy. And without a showing of a less restrictive regulation on exchange of property in the free market.

142. Plaintiffs are informed and believe that the acts of the Defendant and their employees and agents were intentional in failing to protect and preserve Plaintiffs' property and that, at minimum, Defendants were deliberately indifferent to the likely consequence that the property would be seized through FINRA's restrictions; and unlawfully deprived of its full use, based on the past circumstances of similar constitutional and statutory violations of the law.

**B. COMMON LAW**

Claim 8: Violation of Monopolization/Unlawful Business Practices

143. All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

144. Violations resulting from unlawful restrictions severely diminish the ability of the average American to freely enter their desired business practice, without a compelling reason to do so.

## Claim 9: Violation of State Anti-Discrimination Act

145. All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

## C. CONGRESSIONAL

## Claim 10: Violation of 15 U.S.C., § 1 of the Sherman Antitrust Act

146. All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

147. Violations resulting from unlawful restrictions on property, nullifies the goods upon its entry into the free market.

148. Violation of 15 U.S.C., § 1 of the Sherman Antitrust Act resulting from unlawful tying of Americans right to control and transfer property.

149. Defendants have substantial control over market power through their ability to promulgate rules and laws concerning control and transfer of property.

150. There is no appropriate or legitimate justification to require minimum equity to partake in day-trading; nor need to exercise power to limit the ability of Americans to maintain day-trading at other amount, than the current FIMRA's restriction of $25,000.

151. This unlawful conduct has harmed competition within American markets, and has caused injury to economic growth and every American investor. Available capital for investing into the American economy is diminished, and there is a less competitive market due to restrictions placed on Americans by FIMRA. Capital investment for business growth is lower than it would be in a competitive market; and the number and effectiveness of competitors have been diminished by unlawful means.

152. The anticompetitive conduct described herein has damaged the plaintiff and the Class plaintiff in violation of the Sherman Antitrust Act, 15 U.S.C., § 1.

## Claim 11: Violation of 15 U.S.C., § 2 of the Sherman Antitrust Act

153. All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

154. Unlawful anticompetitive action by FIMRA have created unlawful Monopolization. Violation of 15 U.S.C., § 2 of the Sherman Antitrust Act resulting from unlawful Acquisition of Maintenance of Monopoly Power in the Financial Services Market.

20

155. Through the actions described herein, Defendants acquired and maintained monopoly power in the financial market. This conduct has harmed competition in that market, and has caused injury to every investor and financial business services in America. Prices in the financial market are higher than they would be in a competitive market; the supply and selection of financial services available is lower than it would be in a completive market; the number of investors and effectiveness of competitors have been diminished by unlawful means.

Claim 12: Violation of the National Labor Relations Act

156. All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

157. Violation of 15 U.S.C., § 2 of the Sherman Antitrust Act Resulting from Unlawful Attempted Monopolization of the Legal Services Market.

158. Defendants acted with specific intent to monopolize the Financial Services Market.

159. There was and is a dangerous possibility that Defendants will succeed in its attempt to monopolize the Financial Service market because Defendants collectively control all of the financial services market and have the ability and actually do exclude many Americans and business from competing within defendant's anticompetitive restrictive means. Further success in excluding competitions from the financial services market will allow Defendants to obtain an illegal national monopoly over financial services market.

160. This conduct has harmed competition in that market, making the supply and selection of financial services and availability of investments lower than it would be in a competitive market. Defendants unlawful attempted monopolization has also reduced the number and effectiveness of competitors in the financial services market and deprived access to the financial market to many Americans, and diminished the overall capital available to the American economy.

161. The anticompetitive conduct described herein has damaged Plaintiffs and the alleged Classes and is in violation of the Sherman Antitrust Act, 15 U.S.C., § 2.

Claim 13: ATTEMPTED MONOPOLIZATION - Violation of 15 U.S.C., § 2

162. All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

163. Violation of 15 U.S.C., § 2 of the Sherman Antitrust Act Resulting from Unlawful Attempted Monopolization of the Legal Services Market.

164. Defendants acted with specific intent to monopolize the Financial Services Market.

165. There is no appropriate or litigate justification for the actions and conduct which have facilitated defendants' monopolization of the financial market; American companies are unjustly limited in services they are able to offer to American and international investors.

166. The anticompetitive conduct described herein has damaged Plaintiffs and the alleged Classes and is in violation of the Sherman Antitrust Act, 15 U.S.C., § 2.

Claim 14: Violation of Fair Labor Standards and Fair Labor Standards Amendment Act

167. All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

168. Defendants imposition and burdens placed on Americans are invalid, in violation of the National Labor Relations Act.

169. Defendants have a fiduciary duty to SCC, and the constitutions, which also requires compliance with all federal laws. Their unlawful actions and unlawful policies are in violation of the federal constitution; and are in violation of the National Labor Relations Act.

170. Defendants have also undercut the rights that are protected under U.S. Constitution and privileges and immunities that are available to out-of-state investors.

Claim 15: Violation of the FAAAA

171. All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

172. The Federal Aviation Administration Authorization Act of 1994 ("FAAAA") is codified at 49 U.S.C. § 14501 et seq. 44. The FAAAA prohibits any state or any political subdivision thereof from enacting or enforcing any law or regulation related to the price, route, or service of a motor carrier.

173. "The term **"transportation"** includes - (A) a motor vehicle, vessel, warehouse, wharf, pier, dock, yard, **property**, facility, **instrumentality**, or equipment of any kind related to the movement of passengers or **property**, or both, regardless of ownership or an agreement concerning use; and (B) **services related** to that movement, including arranging for, receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, packing, unpacking, and interchange of passengers and **property**." *See* 49 U.S.C. § 13102(23)

174. Prices will be impacted because it is significantly more expensive to utilize day-trading financial services, limit growth, and diminish the number of American and international investors. It will cost consumers significantly more money before they are able to invest, and deter many American and international investors. Without the ability to freely utilize willing American and international investors, companies will simply, as they have, not partake in completive practice of offering financial services nationally.

175. Moreover, presently, it is cost-prohibitive for many interested American and international investors. Thus, many Americans and international investors are deterred from investing, and the result diminishes the ability for American economy to grow.

Claim 16: Violation of the Federal Trade Commission Act

176. All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

Claim 17: Violation of the Federal Trade Commission Act

177. All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

Claim 18: Violation of The Clayton Act by Restraint to trade

178. All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

Claim 19: Violation of Fair Debt Collection Practices Act

179. All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

180. If Liviz exceeds the threshold of three trades in five days, he is threatened of having his property seized, and restricted until he transfers additional funds, to meet the $25,000 restriction as set, and directed by FIMRA. *See* Part B *supra*. *See also* 15 U.S.C. § 1692 *et seq*. ("FDCPA")

Claim 20: Violation of  29  U.S.C., § 187(a)

181. All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

182. "It shall be unlawful, for the purpose of this section only, in an industry or activity affecting commerce, for any labor organization to engage in any activity or conduct defined as an unfair labor practice in section 158(b)(4) of this title." *See* 29 U.S. C., § 187(a).

183. Defendants actions have burdened and obstructed commerce and free flow of commerce that is directly impacting Liviz's ability to take part in the trade. *See* 29 U.S.C., § 152(7).

184. "Whoever shall be injured in his business or property by reason or [1] any violation of subsection (a) may sue therefor in any district court of the United States subject to the limitations and provisions of section 185 of this title without respect to the amount in controversy, or in any other court having jurisdiction of the parties, and shall recover the damages by him sustained and the cost of the suit." *See* 29 U.S. C., § 187(b).

Claim 21: Violation of Labor Management

185. All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

## D. STATUTORY CIVIL RIGHTS

23

**Claim 22: Violation of 42 U.S.C. § 1981**

186. All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

187. All Defendants are privet actors, acting within the scope of their state duties, in violation of Plaintiffs' civil rights.

188. Each of the Defendants, their employees and agents, participated personally in the unlawful conduct challenged herein and, to the extent that they did not personally participate, authorized, acquiesced, set in motion, or otherwise failed to take necessary steps to prevent the acts that resulted in the unlawful conduct and the harm suffered by Plaintiffs. Each acted in concert with each other. The challenged acts caused the violation of Plaintiff's rights.

189. Defendants have unlawfully through anti-competitive actions or direct seizure through devaluation of property right, and deprivation of right to contract.

**Claim 23: Violation of 42 U.S.C. § 1981(a)(1)**

190. All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

**Claim 24: Violation of 42 U.S.C. § 1982**

191. All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

**Claim 25: Violation of 42 U.S.C. § 1983 Freedom of Speech**

192. All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

**Claim 26: Violation of 42 U.S.C. § 1983 Equal Protection**

193. All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

**Claim 27: Violation of 42 U.S.C. § 1983 Deprivation of Property Right**

194. All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

**Claim 28: Violation of 42 U.S.C. § 1985**

195. All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

**Claim 29: Violation of 42 U.S.C. § 1985(3)**

196. All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

Claim 30: Violation of 42 U.S.C. § 1986

197. All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

## II. CLASS ACTION CLAIMS OF ACTION

### A. CONSTITUTIONAL

Claim 1: Deprivation of Interstate Travel

198. All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

Claim 2: Deprivation of Property

199. All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

Claim 3: Deprivation of Right to Contract

200. All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

Claim 4: Deprivation of Equal Protection of The Laws

201. All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

Claim 5: Interference With Liberty To Choose Occupation

202. All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

Claim 6: Interference With Liberty and Protection of Franchise

203. All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

Claim 7: Deprivation of Right to Privacy

204. All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

205. Defendants and their employees and agents violated Plaintiffs' Fourth Amendment rights to be free from unreasonable seizure of their property by confiscating and then destroying Plaintiffs' property without a warrant.

206. These unlawful actions were done with the specific intent to deprive Plaintiffs of their constitutional rights to be secure in their property.

207. Plaintiffs are informed and believe that the acts of the Defendant and their employees and agents were intentional in failing to protect and preserve Plaintiffs' property and that, at minimum, Defendants were deliberately indifferent to the likely consequence that the

property would be seized and destroyed unlawfully, based on the past circumstances of similar constitutional and statutory violations of the law.

## B. COMMON LAW

Claim 8: Violation of Monopolization/Unlawful Business Practices

208.  All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

Claim 9: Violation of State Anti-Discrimination Act

209.  All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

## C. CONGRESSIONAL

Claim 10: Violation of 15 U.S.C., § 1 of the Sherman Antitrust Act

210.  All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

Claim 11: Violation of 15 U.S.C., § 2 of the Sherman Antitrust Act

211.  All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

Claim 12: Violation of the National Labor Relations Act

212.  All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

Claim 13: ATTEMPTED MONOPOLIZATION - Violation of 15 U.S.C., § 2

213.  All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

214.  Violation of 15 U.S.C., § 2 of the Sherman Antitrust Act Resulting from Unlawful Attempted Monopolization of the Legal Services Market.

215.  Defendants acted with specific intent to monopolize the Financial Services Market.

216.  There is no appropriate or litigate justification for the actions and conduct which have facilitated defendants' monopolization of the financial market; American companies are unjustly limited in services they are able to offer to American and international investors.

217.  The anticompetitive conduct described herein has damaged Plaintiffs and the alleged Classes and is in violation of the Sherman Antitrust Act, 15 U.S.C., § 2.

Claim 14: Violation of Fair Labor Standards and Fair Labor Standards Amendment Act

26

218. All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

Claim 15: Violation of the FAAAA

219. All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

Claim 16: Violation of the Federal Trade Commission Act

220. All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

Claim 17: Violation of the Federal Trade Commission Act

221. All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

Claim 18: Violation of The Clayton Act by Restraint to trade

222. All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

Claim 19: Violation of Fair Debt Collection Practices Act

223. All paragraphs supra and hereafter are re-alleged as if stated herein in paragraphs hereafter.

Claim 20: Violation of  29  U.S.C., § 187(a)

224. All paragraphs supra and hereafter are re-alleged as if stated herein in paragraphs hereafter.

Claim 21: Violation of Labor Management

225. All paragraphs supra and hereafter are re-alleged as if stated herein in paragraphs hereafter.

**D. STATUTORY CIVIL RIGHTS**

Claim 22: Violation of 42 U.S.C, § 1981

226. All paragraphs supra and hereafter are re-alleged as if stated herein in paragraphs hereafter.

Claim 23: Violation of 42 U.S.C, § 1981(a)(1)

227. All paragraphs supra and hereafter are re-alleged as if stated herein in paragraphs hereafter.

Claim 24: Violation of 42 U.S.C, § 1982

228. All paragraphs supra and hereafter are re-alleged as if stated herein in paragraphs hereafter.

27

Claim 25: Violation of 42 U.S.C. § 1983 Freedom of Speech

229. All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

Claim 26: Violation of 42 U.S.C. § 1983 Equal Protection

230. All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

Claim 27: Violation of 42 U.S.C. § 1983 Deprivation of Property Right

231. All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

Claim 28: Violation of 42 U.S.C. § 1985

232. All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

Claim 29: Violation of 42 U.S.C. § 1985(3)

233. All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

Claim 30: Violation of 42 U.S.C. § 1986

234. All paragraphs *supra* and hereafter are re-alleged as if stated herein in paragraphs hereafter.

## III. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on his behalf and on behalf of the putative classes pray that the Court declare, adjudge and decree the following:

a. Asserting federal jurisdiction, on one or more of the aforementioned alleged reasons, so that the claim of action against the Defendants can be heard in federal court.

b. That this action may be maintained as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure with respect to plaintiffs' claims for injunctive relief, and Rule 23(b)(3) of the Federal Rules of Civil Procedure with respect to the claims for damages and other monetary relief, and declaring plaintiff as representatives of the Classes and pursuant to First Amendment allow admit this jurist as counsel for the Classes;

c. That the conduct alleged herein constitutes unlawful tying, monopolization, in violation of the common law, and Sections 1 and 2 of the Sherman Antitrust Act;

d. That the conduct alleged herein is in violation of the Unfair Competition Law and appropriate restitutionary and other injunctive relief be granted pursuant to this law;

e. That the conduct alleged herein is in violation of the National Labor Relations Act; and appropriate damages and injunctive relief be granted pursuant to this law;

f. That the conduct alleged herein is in violation of the Fair Labor Standards Act and Fair Labor Standards Amendment Act; and appropriate damages and injunctive relief be granted pursuant to this law;

g. That the conduct alleged herein is in violation of the FAAAA; and appropriate damages and injunctive relief be granted pursuant to this law;

h. That the conduct alleged herein is in violation of the Federal Trade Commission Act; and appropriate damages and injunctive relief be granted pursuant to this law;

i. That the conduct alleged herein is in violation of the Clayton Act; and appropriate damages and injunctive relief be granted pursuant to this law;

j. For an order permanently restraining and enjoining Defendants from continuing the unfair and anticompetitive activities alleged herein;

k. That plaintiffs and the Classes are entitled to damages, penalties and other monetary relief provided by applicable law, including treble damages;

l. That plaintiffs and the Classes recover their costs of suit, including reasonable *jurist for justice* (attorneys') fees and pre- and post-judgment interest;

m. For an order requiring full restitution of all funds acquired  for jurist for justice services by Defendants unfair business practices, including disgorgement of revenues and/or profits;

n. Awarding plaintiffs and the Classes their expenses and costs of suit, including reasonable attorneys' fees, to the extent provided by law; and

o. That plaintiffs and the Classes are granted such other, further, and different relief as the nature of the case may require or as may be determined to be just, equitable, and proper by this Court.

p. Declaratory Judgment: 1) unlawful to place a minimum limit on American and international investors; 2) unlawful to place restriction on property transfer based on minimum equity restrictions; 3) American business have a right to offer more financial services to American investors and international investors free from fear of unlawful restrictions.

q. Money Judgment for damages, injury, violations, jurist for justice (attorney) fees, costs, and other relief pursuant to call of actions.

r. For such other and further relief, to cure injury/s and legal costs, as the Court may deem just, proper, and appropriate.

## III. JURY DEMAND

Plaintiffs respectfully demand a trial by jury on all issues so triable.

The aforementioned is true, accurate and correct, to the best of my knowledge, recollection, and interpretation.  Signed under pains and penalty of perjury on this Fifteenth day of June in the year of 2020 of our Lord.

*Ilya Liviz D.L.D*

Hon. Ilya Liviz D.L.D.
Chief *Jurist for Justice*

Respectfully submitted,

*Ilya Liviz D.L.D.*

Hon. Ilya Liviz D.L.D.
Chief *Jurist for Justice*
**NATIONAL ACADEMY FOR JURISTS**
Advocates for Civil Rights & Civil Liberties
Dated: 06/15/2019                    12 Hemenway St. Rm. 415, Boston, MA 02115
www.NAFJ.US - www.Liviz.com
ilya.liviz@gmail.com - (978) 606-3632

## CERTIFICATE OF SERVICE

I hereby certify this Verified Unfair Trade & Practice complaint has been served on the defendant via first class mail this Fifteenth day of June in the year of 2020 of our Lord.

VIA  DEMAND  LETTER.

*Ilya Liviz D.L.D.*

Hon. Ilya Liviz D.L.D.
Chief *Jurist for Justice*

30

Hon. ILYA LIVIZ D. LD.
12 HEMENWAY St. Rm 415
BOSTON, MA 02115

7019 0000 0000 4430 6894

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE
CERTIFIED MAIL

U.S. District Court
For the District of Colum
333 Constitution Ave,
N.W WASHINGTON D.C.
20001



U.S. POSTAGE PAID
FCM LG ENV
BOSTON, MA
02115
JUN 15. 20